IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| MARTY LYNN NASH ) | |
| ) | |
| v. ) | No. 2:14-0081 |
| ) | Judge Trauger/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To:     The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for supplemental security income (SSI), as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 12), to which defendant has responded (Docket Entry No. 15). Plaintiff has further filed a reply in support of his motion. (Docket Entry No. 16) Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I.  Introduction

Plaintiff protectively filed his application for benefits on March 3, 2011,

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

alleging the onset of disability as of September 1, 2001, due to problems with his back and left leg/foot. (Tr. 129) Plaintiff subsequently amended his alleged onset date to March 3, 2011, corresponding with the date his SSI application was filed. (Tr. 32) Following denials at the initial and reconsideration stages of agency review, plaintiff requested *de novo* hearing of his claim by an Administrative Law Judge (ALJ). The ALJ hearing was held on December 7, 2012 (Tr. 27-45), and plaintiff appeared with counsel and gave testimony. Before adjourning the hearing, the ALJ gave plaintiff's counsel 30 days to supplement the record. (Tr. 44) On February 28, 2013, the ALJ issued a written decision in which he found that plaintiff was not under a disability as defined by the Social Security Act. (Tr. 13-21) That decision contains the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since March 3, 2011, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: chronic back pain with radiculopathy and left foot drop (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform *sedentary* work as defined in 20 CFR 416.967(a).

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on March 11, 1968 and was 42 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate

in English (20 CFR 416.964).

8. Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 3, 2011, the date the application was filed (20 CFR 416.920(g)).

(Tr. 15-16, 19-20)

On June 26, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following record review is taken from plaintiff's brief:

Plaintiff, Marty Lynn Nash, was born on March 11, 1968 and was 43 years old upon his alleged disability onset date. Mr. Nash possesses the equivalent of a high school education.

While at work in 1994, a plywood wall fell 15' onto Mr. Nash's back causing severe injuries. (AR. at p. 189.) In August of 2001, Dr. Nahem A. Mainey observed that Mr. Nash suffered from pain in his left hip, posterior left thigh, posterior left calf, and left big toe. (AR.

at p. 189.) Dr. Mainey also noted MRI and Myelogram CT findings of spondylolisthesis Grade I L5 on S1, L5 root lesion on the left, "[b]ilateral pars interarticular defects at the L5 level with mild Grade I anterior listhesis of L5 with respect to Sl." (AR. at p. 189-90.) Although Dr. Naimey observed no loss in muscle mass in Mr. Nash's left leg or in lumbar range of motion, he did note genu recurvatum of the left knee, significant left foot drop, unsteady gait, and significant loss of lower extremity strength. (AR., DE 10, p. 189-90.) Dr. Naimey recommended surgery to fuse L5 to S1 but opined that Mr. Nash's condition would not improve with decompression. (AR. at p. 190.) Dr. Mainey referred Mr. Nash to Dr. James Feild in September of 2001. (AR. at pp. 191-96.) According to Mr. Nash, he underwent surgery to place one rod horizontally across his pelvis for support, secured by screws to his hips, and one vertically to stabilize his vertebrae. (AR. at p. 222)

On July 14, 2011, Mr. Nash was examined by Dr. Raymond Azbell, M.D., a DDS consultative expert. Dr. Azbell noted significant loss in range of motion to Mr. Nash's lumbar spine, "significant footdrop" on the left with "marked" weakness at the left foot, left ankle, and left knee. (AR. at p. 198.) According to Dr. Azbell, these impairments result in a marked limp favoring the left side. (AR. at p. 198.) Dr. Azbell opined that Mr. Nash retains the residual functional capacity ("RFC") to lift and carry up to 20 pounds occasionally and 10 pounds frequently; sit for 4 hours at a time but for no more than 6 hours in an 8 hour work day; stand for 20 minutes at a time but no more than 1 hour in an 8 hour work day; and walk for 15 minutes at a time but no more than 1 hour in an 8 hour work day. (AR. at p. 201.) Dr. Azbell further concluded that Mr. Nash may never use foot controls; never climb ladders, balance, kneel, crouch, or crawl; and he is unable to walk a block at a reasonable pace over rough or uneven surfaces. (AR. at pp. 202-04.)

On September 5, 2012, Dr. Pearline Butcher, M.D., reviewed the diagnosis and opinions of Dr. Mainey and Dr. Azbell and performed her own thorough examination of Mr. Nash. While Dr. Butcher observed the same deficiencies as Dr. Azbell, she also noted loss in muscle mass in Mr. Nash's left thigh and left calf that Dr. Azbell failed to appreciate (AR. at p. 224) According to Dr. Butcher, Mr. Nash retains the RFC to lift and carry only 10 pounds occasionally but never more. (AR., DE 10, p. 226.) Mr. Nash may, with the ability to alternate positions at will, sit for 5 minutes at a time but no more than 1 hour in an 8 hour work day; stand for 5 minutes at a time but no more than 30 minutes in an 8 hour work day; walk for 1-2 minutes at a time but no more than 30 minutes in an 8 hour work day; and walk no more than 15 feet without a cane due to his imbalance. (AR. at p. 227.) Further, like Dr. Azbell, Dr. Butcher opined that Mr. Nash may never use his left foot while engaging in work related activities; he can never climb ladders, balance, stoop, kneel, crouch or crawl; and is unable to walk a block at a reasonable pace over rough or uneven surfaces. (AR. at p. 229.)

(Docket Entry No. 12-1 at 2-4)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

#### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step

sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications

to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

C. Plaintiff's Statement of Errors

Plaintiff first contends that substantial evidence does not support the ALJ's finding of his RFC, in light of the ALJ's failure to conduct a function-by-function assessment which accounts for all of the postural and manipulative limitations assessed by the examining physicians in this case. In particular, plaintiff spotlights the concurring opinions of Drs. Azbell and Butcher that plaintiff's gait was limping and unstable; that he can never use his left foot to operate foot controls; that he can never climb ladders, balance, kneel, crouch or crawl; and, that he is unable to walk a block at a reasonable pace on rough or uneven surfaces.

The Sixth Circuit has examined the requirement that a function-by-function assessment inform the RFC determination, finding as follows:

> In *Bencivengo [v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)], the Third Circuit stated, "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Bencivengo,* slip op. at 4. The Third Circuit distinguished between what an ALJ must consider and what an ALJ must

7

> discuss in a written opinion. The ALJ need not decide or discuss uncontested issues, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Bencivengo,* slip op. at 5.

Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547-48 (6th Cir. Mar. 4, 2002). Here, the ALJ articulated just how the record evidence supports the determination that plaintiff could perform sedentary work as defined in the regulations. According to the regulatory definition,

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a). Notably, while the ALJ did not specifically discuss the limitation against using left-sided foot controls, jobs that require very little lifting but involve "sitting most of the time with some pushing and pulling of arm of leg controls" are categorized as light, not sedentary work. 20 C.F.R. § 416.967(b). The ALJ did recognize the examining physicians' observation of a limping gait and left leg weakness, and acknowledged that "[t]he claimant can do limited prolonged walking and he has trouble with postural movements." (Tr. 17) These are presumably the limitations which, at the fifth step of the sequential evaluation process, required the utilization of the grids as a framework for decisionmaking rather than directing the outcome, but did not so erode the existing occupational base that

8

further vocational proof was required. (Tr. 20)[2]

In sum, the undersigned finds that the ALJ's finding of plaintiff's RFC is supported by substantial evidence, and is not undermined by any failure to consider the functional limitations identified by Drs. Azbell and Butcher.

Plaintiff next argues that the ALJ failed to properly develop the medical record, in that he failed to order another consultative examination at government expense despite his awareness that specialized medical evidence was needed to evaluate plaintiff's back impairment and that such evidence was not available from plaintiff's back surgeon, due to the expiration of the hospital's record retention period. (See Tr. 232) However, while the ALJ did express a desire to view the records of plaintiff's 2000 back surgery (Tr. 42-44), it cannot be said that, without such records, "the evidence as a whole [was] insufficient to support a determination or decision on [plaintiff's] claim," 20 C.F.R. § 416.919a(b), so as to require the ALJ to purchase another consultative examination. Despite plaintiff's near total failure to produce evidence supporting his disability claim, the medical evidence of record (including the results of one consultative examination already purchased by the government) is sufficient to gauge plaintiff's exertional and nonexertional limitations, and the record as a whole amply supports the conclusion that the extent of limitation he subjectively alleges is not fully credible. (Tr. 17-18) Indeed, plaintiff does not take issue with the ALJ's credibility

---

[2]The ALJ found that,

> If the claimant had the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, any additional limitations have little or no effect on the occupational base of unskilled sedentary work. A finding of "not disabled" is therefore appropriate under the framework of this rule.

determination.  (See Docket Entry No. 16 at 5)  Moreover, while plaintiff claims that "ALJ Evans himself stated at the hearing that, if Mr. Nash's back surgery were as extensive as reported, Mr. Nash's impairments would be severe enough that a finding of disability would result" (id. at 7), the hearing transcript in fact reveals no such statement by the ALJ.  Rather, it is clear that the ALJ merely wanted to see if plaintiff's recollection of the surgery was accurate (Tr. 42-44), a curiosity that is of no moment in view of the well supported determination of plaintiff's RFC.  Accordingly, plaintiff's argument on this issue is without merit.

## IV.  Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court.  Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections.  Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 11th day of August, 2015.

 s/ John S. Bryant  
JOHN S. BRYANT  
UNITED STATES MAGISTRATE JUDGE